IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TRAVIS TODD | CRIMINAL ACTION FILE NO.<br><br>1:16-CR-427-AT-JKL-30 |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This is a criminal case. The case is before the Court on Defendant Travis Todd's Motion to Suppress Evidence Obtained Through Warrantless Automobile Search, [Doc. 621]; his Motion for *Jackson-Denno* Hearing, [Doc. 622]; and his Request for Bill of Particulars, [Doc. 1051]. For the reasons that follow, it is **RECOMMENDED** that the motion to suppress be **DENIED** on its merits and the motion for *Jackson-Denno* hearing be **DENIED** as abandoned, and it is **ORDERED** that the motion for a bill of particulars be **DENIED**.

**I.   SUMMARY OF CHARGES AGAINST TODD**

Todd is charged in this case with the federal crimes of conspiracy to distribute controlled substances (Count 8) and possession of marijuana and methamphetamine with intent to distribute (Count 13). [Doc. 33 (First Superseding Indictment) at 46-47, 50-51.] Although he is not charged with Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, the superseding

indictment alleges that he was involved in several overt acts committed in furtherance of that conspiracy.[1]  Specifically,

- On or about September 16, 2016, defendant Tyrone Clark (who is charged with RICO conspiracy) allegedly obtained drugs for distribution from Todd and codefendant Demario Ridley.  [Doc. 33 at 28 (Overt Act 57).]

- On or about and between November 4, 2016 and November 5, 2016, Todd, along with defendants Patrick Caple and Joseph Riley, allegedly possessed Xanax for distribution.  [Doc. 33 at 39 (Overt Act 120).]

- On or about November 5, 2016, Todd and codefendants Gary Sartor and Riley allegedly provided C.M. (an alleged member of the Nine Trey Gangsters) with marijuana and methamphetamine for delivery to Marcus Russell.  [Doc. 33 at 39 (Overt Act 122).]

---

[1] More specifically, in Count 1, the superseding indictment charges fourteen of Todd's codefendants in this case with being members of the Nine Trey Gangsters, a street gang with members in New York, Georgia, and other southeastern states, which allegedly operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4).  [Doc. 33 at 3-4, 12, 14.]

2

- On or about November 7, 2016, Todd and codefendant Riley allegedly possessed Xanax for distribution.  [Doc. 33 at 39 (Overt Act 124).]

In Count 8, the superseding indictment alleges that beginning in at least 2016, Todd and others engaged in a conspiracy to distribute and possess with intent to distribute a controlled substance, namely:

> (1) at least five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, (2) marijuana, a Schedule I controlled substance, (3) Hydrocodone, a Schedule II controlled substance, (4) Alprazolam ("Xanax"), a Schedule IV controlled substance, (5) Promethazine Hydrochloride with Codeine, a Schedule V controlled substance, and (6) a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance . . . .

[Doc. 33 at 47.]  In Count 13, Todd and others are charged with possession with intent to distribute marijuana and methamphetamine on or about November 4, 2016, through and including November 6, 2016.  [*Id.* at 50.]

## II.  MOTION TO SUPPRESS

Todd moves to suppress a 9mm firearm that agents seized from his car following his arrest on the charges in this case.  [*See* Doc. 621.]  An evidentiary hearing on the motion was held before me on October 29, 2018.  Transcript references are to the transcript of that hearing (hereinafter "Tr.").  [*See* Doc. 813.]

3

Following the hearing, Todd submitted a brief in support of his motion [Doc. 836] and the government has filed a response [Doc. 844]. Todd did not file a reply. For the reasons that follow, it is **RECOMMENDED** that the motion to suppress be **DENIED**.[2]

### A.   Facts

At around 5:00 a.m. on October 18, 2017, federal agents went to 759 Charlotte Place, Atlanta, Georgia (the "Charlotte Place Residence"), to execute a search warrant for the residence and to arrest Todd and codefendant Demario Ridley on the charges in this case. (Tr. at 5, 12.) FBI Special Agent Douglas Scott Rambaud was the team leader responsible for coordinating efforts to execute the warrant and arrest Todd and Ridley. (Tr. at 5.)

---

[2] Also pending before the Court is Todd's Motion for *Jackson-Denno* Hearing. [Doc. 622.] The Court heard evidence concerning Todd's post-arrest statements at the October 29 hearing; however, Todd did not address the issue in his post-hearing briefs. After a conference with counsel on April 9, 2019, the Court directed defense counsel to file a supplemental brief in support of his motion by May 9, 2019, to perfect his motion based on the evidence taken at the evidentiary hearing. [Doc. 967.] Todd did not file a supplemental brief, and on July 27, 2019, he filed a "Notice to Court that No Supplemental Briefing Will Be Filed in Support of Motion for *Jackson-Denno* Hearing" [Doc. 1052]. Since Todd did not perfect the motion as directed by the Court, the Court deems the motion abandoned and **RECOMMENDS** it be **DENIED**.

Approximately one hour after agents executed the search warrant and arrested Ridley, SA Rambaud received a telephone call from an agent at the command post who advised that Todd was traveling to the Charlotte Place Residence in a black Ford or Lexus. (Tr. at 5.) SA Rambaud alerted Atlanta Police Department ("APD") officers who were providing security for the search to be on the look-out for the vehicle and potentially Todd. (*Id.* at 6.) Although it was early in the morning and still dark, visibility was good. (*Id.* at 7.)

SA Rambaud then received a second call, advising that Todd was very close by and that he appeared to be returning to the Charlotte Place Residence. (Tr. at 7.) Law enforcement officers took up positions on the street to look for Todd. SA Rambaud observed a car slowly driving down the street due to heavy traffic, and as he looked inside, he observed a person who appeared to be Todd driving the car with a female passenger. (*Id.*) SA Rambaud, who was not in uniform, alerted the uniformed APD officers to stop the car, and SA Rambaud moved in to take a position at the driver's side corner. (Tr. at 8.) Law enforcement identified Todd by his driver's license, removed him from the car, and arrested him on the federal arrest warrant issued on the superseding indictment. (Tr. at 8, 14.)

After Todd was taken into custody, SA Rambaud learned that APD Lieutenant Pete Reis, who had been standing on the passenger side of the Lexus, had seen Todd drop a gun in the back seat of the car. (Tr. at 8-9, 15; Gov't Exs. 1, 5-6 [Doc. 801 at 3, 8-9].) SA Rambaud notified the evidence response team ("ERT") leader FBI Special Agent Thomas McAfee that a gun had been observed in the car and instructed ERT personnel to collect the gun. (Tr. at 8-9, 19-20.) At the time, SA Rambaud was aware that Todd was a "prohibited person" who could not lawfully possess a firearm. (Tr. at 9.) SA McAfee found a pistol lying on the rear floorboard behind the driver's seat. (Tr. at 20-21; Gov't Exs. 1-2 [Doc. 801 at 3-4].) He seized the gun, rendered it safe, and placed it into evidence. (Tr. at 9, 21.)

**B. Analysis**

In Todd's post-hearing brief, he principally argues that the search of the vehicle was not lawful under the search-incident-to-arrest exception to the warrant requirement.[3] [*See* Doc. 836 at 3-6.[4]] In response, the government does not assert

---

[3] Presumably, Todd focused on the incident-to-arrest exception because at the evidentiary hearing, SA Rambaud characterized the seizure of the gun as "incident to the arrest." (Tr. at 16.)

[4] Todd's supplemental brief is not paginated. The Court refers to the page numbers automatically generated by CM/ECF.

6

that the search-incident-to-arrest exception applies here but instead contends that the search of the vehicle is governed by the automobile exception or, alternatively, that exigent circumstances made it reasonable for the agents to seize the gun without a warrant out of concern for the safety of the officers and the public. [Doc. 844.] For the reasons that follow, the Court finds that the search of the car and the seizure of the gun fall squarely within the automobile exception and recommends that Todd's motion be denied on that basis. As such, the Court declines to address the merits of either the search-incident-to-arrest or the exigent circumstances exception.

Under the automobile exception to the warrant requirement, law enforcement may conduct a warrantless search of a vehicle if (1) it is readily mobile and (2) law enforcement has probable cause for the search. *United States v. Dixon*, 901 F.3d 1322, 1339 (11th Cir. 2018), *cert. denied sub nom. Portela v. United States*, 139 S. Ct. 854 (2019), *and cert. denied sub nom. Chacon v. United States*, 139 S. Ct. 1392 (2019). A vehicle is "readily mobile" if it is operational. *Id.* Probable cause exists for a search where, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle. *Id.*

7

Here, there is no dispute that the car was operational and therefore readily mobile, as Todd was observed driving it on public streets and was removed from the vehicle when he was arrested. (Tr. at 7-8.) Likewise, probable cause existed to believe that the vehicle contained contraband or evidence of a crime because Lt. Reis observed Todd drop a gun inside the car and law enforcement knew that Todd was a prohibited person who could not lawfully possess a firearm (Tr. 8-9.)

Todd raises several arguments that the search of the vehicle was unlawful; however, none has merit. First, he argues that law enforcement had no reason to believe that the vehicle contained evidence or contraband because the application for the warrant authorizing the search of the Charlotte Place Residence mentioned only that Todd's "black Honda" was parked at the location but did not indicate that there would be any contraband in the car. In addition, when he was arrested, he was not driving the black Honda, but rather was driving a Lexus, which belonged to another individual.[5] [Doc. 836 at 5.] These arguments fail because law enforcement officers had probable cause to search the car because Todd was

---

[5] Todd mistakenly refers to the Lexus as an Acura Integra in his supplemental brief. [*See* Doc. 836 at 5.]

observed dropping a firearm inside the car and they were aware that he was a prohibited person.

Second, Todd argues that Lt. Reis's observation of the gun being dropped was a "post hoc rationalization" for the warrantless search. [Doc. 836 at 5.] Todd, however, misunderstands the hearing testimony. At the hearing, SA Rambaud testified that it was after Todd had been removed from the car and arrested that he learned Lt. Reis had observed Todd drop the gun inside the car. (Tr. 8-9.) Upon learning what Lt. Reis had observed, SA Rimbaud directed the ERT to search the car, and the gun was seized. (Tr. 9.) Lt. Reis's observation led to the search and seizure; thus, it was not a post-hoc rationalization.

Third, Todd urges to Court to reject the hearing testimony about what Lt. Reis observed because Lt. Reis did not testify at the hearing, and whatever he said he saw is hearsay. [Doc. 836 at 5-6.] Todd additionally questions how Lt. Reis could have observed him drop a gun because his encounter with law enforcement occurred before daybreak and Lt. Reis would have had to witness the event from the passenger side of the car. [*Id.* at 6.] Todd also points out that when Agent Rambaud was near the rear, driver's side of the car just prior to Todd's arrest, Agent

9

Rambaud did not see the gun, and one is "left to wonder" how the gun wound up on the rear floorboard if it was dropped between the front seats. [*Id.*]

These arguments are not persuasive. To start, as Todd properly concedes, the Court may rely on hearsay testimony at a hearing on a motion to suppress. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."); *United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."). In addition, Agent Reis's statement that he saw Todd drop a firearm inside the car is sufficiently reliable to support a finding of probable cause to search the vehicle. Lt. Reis's position outside the passenger side of the car does not necessarily mean that he was unable to see Todd drop the gun. Nor does the fact that Agent Rambaud did not observe the gun on the floor from his vantage point diminish the reliability of Lt. Reis's statement. Lt. Reis said that he observed Todd drop the gun; he did not say that he saw the gun on the floor of the car. As a matter of common sense, it is far from incredible that an object dropped in the front seat of a car may wind up on the rear floorboard. In sum, having listened to and observed Agent Rambaud,

10

and based on the totality of the other evidence in the record, the Court finds that Lt. Reis's statement that he observed Todd drop a gun inside the car sufficiently reliable to support a finding of probable cause to search the vehicle.[6]

### III.   MOTION FOR BILL OF PARTICULARS

Federal Rule of Criminal Procedure 7(f) authorizes the Court to direct the government to file a bill of particulars.  "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."  *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir.) (quotation omitted), *cert. denied*, 138 S. Ct. 379 (2017).  General discovery is not a valid reason for seeking a bill of particulars, *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981), nor is it "'designed to compel the government to [provide a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial,'" *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)).  Further, "the defendant [is

---

[6] Also, the Court relies on the collective knowledge of participating officers in determining whether the search was lawful. *See United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998).

11

not] entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986). "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars," and as a result, the "mere statement that the defendant will be prejudiced . . . is insufficient." *United States v. Reddy*, No. 1:09-CR-0483-ODE-AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010) (citing *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998)), *report and recommendation adopted in pertinent part*, 2010 WL 3211029 (N.D. Ga. Aug. 11, 2010); *see also United States v. Blitch*, No. 5:08-CR-40(HL), 2009 WL 973359, at *5 (M.D. Ga. Apr. 9, 2009) (citing *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979)). The grant or denial of a bill of particulars rests within the sound discretion of the trial court. *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987); *Colson*, 662 F.2d at 1391.

In his motion for bill of particulars, Todd requests the following additional details about Counts 8 and 13:

12

> 1. Specify how Mr. Todd had knowledge of the contents of a bag allegedly retrieved from a closet by him in or about November 2016.
>
> 2. Specify any other alleged conspirator(s), whether indicted or not, who allegedly conspired with Mr. Todd to further any charged drug trafficking scheme, including the nature of and dates of such involvement.

[Doc. 1051 at 1.] The government objects to both requests as improper attempts to obtain discovery and force the government to reveal its trial strategy. [Doc. 1072 at 3-4.] Notwithstanding its objections, in response to the first request, the government refers Todd to Overt Acts 57, 120, 122, and 124 (which the Court has summarized in Part I above) and further "points defense counsel to wire intercepts on [codefendant] Tyrone Clark's phone on September 16, 2016, and intercepts on [codefendant] Joseph Riley's phone from November 4 through November 7." [*Id.*] In response to the second request, the government states:

> Without abandoning its argument that this request is meritless, the government refers the Defendant to paragraphs 57, 120, 122, and 124, in addition to those individuals listed as defendants in Count 8. Although not the full scope of the government's evidence, the government points defense counsel to wire intercepts on Tyrone Clark's phone on September 16, 2016, and intercepts on Joseph Riley's phone from November 4 through November 7. To the extent the Defendant seeks the names and statements of cooperating defendants, the Court has already ruled in multiple instances that such requests are inappropriate and premature.

13

[*Id.* at 4.] Todd did not file a reply within the time period set by the Court. [*See* Doc. 1053 (giving Todd seven days after the government files its response to file a reply).]

Todd's motion is due to be denied. Similar to motions for bills of particular filed by codefendants in this case, the Court concludes that Todd's requests are an impermissible attempt to seek discovery and to force the government to reveal its trial strategy. What's more, the government has provided Todd with the information he seeks through other sources, including the superseding indictment and discovery, as well as in its response to the motion for a bill of particulars. The Court acknowledges that Todd's request for unindicted coconspirators has merit; however, the Court has already ordered the government to provide the names of any unindicted coconspirators, [*see* Doc. 240 at 10[7]], and in any event, the

---

[7] Specifically, the Court ordered as follows:

> If there is a conspiracy count in the indictment or if the government intends to rely on Fed. R. Evid. 801(d)(2)(E) to introduce co-conspirator statements, the government is directed to provide the defendant with the names of unindicted co-conspirators known to the government, but not with statements made by co-conspirators or with their address or other identifying information, unless required by the *Jencks* Act, *Brady* and/or *Giglio*.

[Doc. 240 at 10.]

government has identified the alleged coconspirators—whether or not charged in Count 8—by reference to Overt Acts 57, 120, 122, and 124 and to the individuals listed in Count 8.

For these reasons, then, the Court finds that the superseding indictment and discovery provides Todd with enough information to allow him to prepare his defenses, minimize surprise at trial, and enable him to plead double jeopardy if later prosecuted for the same offense. Accordingly, the motion for a bill of particulars [Doc. 1051] is **DENIED**

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Todd's Motion to Suppress [Doc. 621] and Motion for *Jackson-Denno* Hearing [Doc. 622] be **DENIED**. It is further **ORDERED** that Todd's Request for Bill of Particulars [Doc. 1051] be **DENIED**.

I have now addressed all referred pretrial matters relating to Defendant Todd and have not been advised of any impediments to the scheduling of a trial.

Accordingly, this case is **CERTIFIED READY FOR TRIAL** as to this defendant.[8]

IT IS SO ORDERED AND RECOMMENDED this 28th day of August, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[8] Since matters pertaining to Todd's codefendants still are pending, the District Court is not required to place his case on the trial calendar at this time. 18 U.S.C. § 3161(h)(6).